Could the clerk call the first case, please? 3-14-05-60 Sarah Williams, Appellee, by Curtis Lane v. Daniel Coon, Appellant, by William Neupel. Mr. Neupel, good morning. Good morning. Good morning. May it please the court, we'll try to start the day with a case that I hope you find both interesting and challenging. I assume we need to use this, or can you hear me without it? It would be preferable if you use it. This is all recorded. Thank you. I represent Daniel Coon, the appellant. He's the father of a soon-to-be seven-year-old daughter. He was permanently denied visitation under a statute that was passed by the legislature in 2013, and on his face was sent to be effective January 1, 2014. I'd like to just generally talk about the old statute and the new statute, just to set a little flavor as to what I believe the differences are between the two and why that's important. The old statute said that if the father was convicted of a sex offense, that he could be denied visitation with the child if the mother so chose. And I think that's probably something we all understand. We probably assume that sex was not something she wanted, that sex was not something that she thought would end up having a child with, and that it would be okay for her to do this and preferable for her to do this. But the legislature wanted to improve that. So they passed a statute that said you don't have to be convicted anymore. If you fit the age parameters, then the mother has the same right that she had if you were convicted. So I think the difference between the two is that in the case such as this one, where the age parameters were met, I mean this girl was 16 and a half when she became pregnant, the father was 23, that fits the age parameters for a sex offense for which she could have been prosecuted. However, for social reasons, the parties chose not to prosecute. They lived together as a family unit. They tried to work through this to see what they could do about establishing a family. And I think that in those situations, there's a marked difference between the forcible rape type situation that we imagine with the prosecution and the situation which is unfortunate that happens all over the country and there's thousands of these cases. But in this particular case, the statute was passed, and it was applied against my client, and he was denied visitation with his daughter. I think that statute is void for two reasons. First of all, as it was applied against my client, and he was denied visitation with his daughter. As it was applied to my client, I think that it ought not to have been applied retroactively. The statute on statutes, 5 ILCS 70-4, governs when statutes are applied retroactively and when they're not. And first of all, the legislature could have said in the statute that it's to be applied retroactively. They didn't. You could look to the legislative history, which I included in my brief, and there could have been a little hint in there as to what they had in mind. And again, they never mentioned that they intended to apply the statute retroactively. And in fact, the language of the statute said that it's to be applied against men who father children, present tense, not men who have fathered children. However, Illinois law has developed, so if there's still a question about it, the Illinois courts have adopted the Landgraf test, which has to determine whether or not the new statute had a retroactive effect. Or whether it impairs the rights of the person in such a way that the retroactive application, you know, should make it not be applied retroactively. So if you'll just look at what happened in this case. Had my client gone to court without the new statute, everybody agrees under the Parentage Act he was entitled to a hearing, he was entitled to a ruling, whether or not it was in the best interest of the child that he have visitation. But with the new statute, it's just cut off. The answer is no. He fits the parameters. Therefore, it's applied to him in such a way that has a retroactive impact, it impairs his rights in many ways, and that's the reason that it fails the test under Landgraf. So it should not be applied retroactively for those reasons. I understand your argument about the statute. I have a question about in your brief, you said that at one point he went to the courthouse in Fulton County and someone came up to him and had him sign a document that was a consent to no visitation. It was worse than that. It was a surrender of parental rights. Is that document still effective? It's not. There never was a hearing on it. It was just placed in the file. It was done by a circuit clerk employee who was related to the other side of this case and who had it done for whatever reason. She has since been terminated. But it is in the file. No hearing has ever been held on it. The reason I mentioned it was that eventually, if this case is reversed, we're going to hear that he didn't show any interest in the child for a year and a half or two years and he was operating under the fact that he thought he may have waived his rights by signing that document until he received legal advice to the contrary. So that's the reason I mentioned it. Thank you. So moving on then to the second reason that I believe this statute ought not to have been applied to my client. Under the Equal Protection Clause of the U.S. Constitution and the state constitution, there's a very serious question about laws such as this that are gender specific. And there's no doubt this law is gender specific. I even put an example in my brief that if you reverse the roles of the male and female here and it had been an older female and a younger male and it had a child, the male would not have had a right to object to visitation. It's interesting the way they wrote it and they could have fixed it so easily, but they didn't. So the question becomes then if the law treats men and women differently, and there's no question but it does, but then is there any compelling state interest in such a law that would make the law valid anyway? I think that's a test in Illinois. So what is a government compelling interest in a statute such as this? I say basically none. Because you have a situation where there's no court involvement now at all in this case. The mother holds all the trump cards. She says no visitation. No visitation. That's the way it is. There's no jail that can be appointed to go make an investigation and report back to the court. And in fact, the child is removed from having any preference. And we could have a situation where even in this case had the parties lived together for let's just say 14 years, just because that's an age where the child's preference might be accepted by the court or at least listened to by the court. And then for whatever reason, the mother and the father never married, but they have a problem. And she would say to the father, I'll show you, you will not ever get visitation with this child. And she could go to court under this statute and absolutely defeat his rights to visitation without court involvement other than just applying the statute. Again, no jail. And in spite of the fact that he might have been the father of the year and this child might have been his best buddy and this child may want to live with or at least visit with its father, the child has no say so. I don't think there's any state compelling interest in a statute such as that. In fact, I think statutes such as that are contrary to what we try to do. I unfortunately get appointed to juvenile cases every now and then. I notice how hard the courts work to place children back with natural parents. It just doesn't seem that this is exactly what we're trying to do today is destroy family relationships where they've already been formed. And in a case such as this, there was a family relationship. They lived together. However, now under this statute, I guess for all time, he's been denied visitation. So this particular statute, they tried to justify it in the appellee's brief as preventing pregnancy. It's an after-the-fact statute. It has nothing to do with pregnancy other than after the baby is born, giving the mother absolute right to deny visitation if the parameters are met. So I think when you look at it as a whole here, there is no compelling government interest. The statute does discriminate against men such as my client and other men in the same situation. So it does violate the Equal Protection Clause. And so for either or both of those reasons, I feel the case should be reversed and sent back to the trial court for a hearing. Thank you. Any questions? Thank you, Mr. Neupel. Mr. Lyon, good morning. Good morning. May it please the court, opposing counsel, it's nice to meet all of you. Prior to my argument, is there any requirement, would you like any further recitation of the facts? I know Mr. Neupel did. No? Okay. I just wanted to make sure. I have a question on the facts. Yes, ma'am. The couple lived together after the birth of the child. The couple resided together until the child was approximately six months old. How old was the natural mother then? She would have been 17. And I presume her parents consented to that living arrangement? I believe at that point the parents did consent to that living arrangement. It's my understanding, and this is a little outside of the record, that the relationship between the parties actually commenced when my client, Sarah Williams, was 13 years of age. But the pregnancy didn't result at that time? That's correct. She became pregnant at the age of 16. And then she lived with the father of the child for six months? Subsequent to the birth of the child, yes, ma'am. And Sarah moved back in with her mother, who was her legal guardian at that point in time? Yes, Your Honor. And somehow they ended up in court and ordered him to pay child support? Yes. My brief actually had a scrivener's error in two locations. The minor child was actually born on June 18, 2008. I actually put 2004, so that was my fault. In November of 2008, there was a petition filed through the Department of Health Care and Family Services to commence child support payments, and that has been affected. Was the mother visiting the child at that point in time with the natural mother's consent? According to my information, after their separation, my client attempted to recommence a relationship and recommence visitation with the father, and he declined. I think, based on my review of the record, that there was visitation pursuant to an agreement between Daniel and Sarah that was every other weekend. Do you think that's an error? I believe that at some point my client did attempt to commence in a visitation schedule. So she consented to visitation? I don't believe it was on an every-other-weekend basis, Your Honor. But she did consent to visitation? She attempted to facilitate, correct. And when they lived together, she certainly was not opposed to visitation? I would agree with that statement. So why is her consent now being withdrawn? Your Honor, it's my understanding that since the attempts after the, I guess, relationship fell apart, my client did attempt to commence the visitation on a regular basis, and as I stated, after a... So do you think estoppel applies? In this circumstance, no, I don't. The reason why I say that is because for a substantial period of time after she attempted to reinstitute this visitation, he declined. It literally, from a period of... It seems like the child is being used as sort of a pawn or an object here between the tug and pull of mother and father. I would disagree, Your Honor. And the reason why I say that is that this family is not a stranger to the court system. As I indicated, in November of 2008, child support, in effect, was commenced. Under the old law, which I believe is the appellant's, I guess, complaint, he would have been able to file a visitation petition at any time to, in fact, institute visitation. He declined to do so. He did file it in 2013. That is true. Which statute was in effect at that time? At the point of 2013, the old Section 6.5 of the Act was in effect. I believe that the effective date of the new provision that we're dealing with today was effective January 1 of 2014. So why wouldn't the old statute control when he filed a petition for visitation in 2013? Well, that's a very good question. It was my understanding that despite the fact the law did change, in effect, at 2014, the ruling was made based off of the current statute. And I think that's one of the questions that we're trying to address today, is which statute, in effect, would comply or apply to that circumstance. What date are you using? I acted under, during the hearing, the new effectuation of the date. I understand there's a relation back doctrine, obviously. There were multiple, actually, petitions filed for visitation purposes. I applied the statute that actually was in effect at the time of the hearing, the June 4, 2014. My basis for that is actually part of my argument in the sense that there are no new duties. There is no impact to the rights that this gentleman would have had, whether it be 2013 or 2014. My basis for saying that is, as you'll see in the appellant's brief, he refers to Section 607 of the Marriage and Dissolution of Marriage Act, the Parentage Act of 1984. And frankly, this is prior to the child's birth in 08. This is prior to the hearings, and it's still a valid law under a Supreme Court of Illinois ruling, that in family cases under the Parentage Act, you are not guaranteed visitation. Under the Dissolution Act, it's assumed, unless there's serious endangerment, that you will have visitation rights of some statement. So in my opinion, there is no impact on his rights. I think that the appellant is walking in here assuming that this court is going to give this gentleman visitation. There is no, I guess, increase of liability for his conduct. What he's asking for is a hearing, right? What's that? I'm sorry? He's only asking for a hearing. I believe that's correct. So we're not under the impression that anybody's going to give him visitation at this point. Just a hearing. Correct. And the decision was made on the basis of the statute, not on the basis of the Parentage versus Dissolution Act. That is accurate. I think, though, that the part of his argument, as I read it in the brief, the appellant's brief, was this is an automatic thing under Section 607. I just wanted to point out that I don't believe that's correct. You are correct, though, that a hearing would be provided on that very basis for those facts. Okay. To summarize, I guess, our position, I know you've read my brief and so forth. For purposes of retroactivity, as you know, this was a circumstance where my client was, in fact, underage. And regardless of the state of the law, that, in effect, is aggravated sexual abuse to my client. She would have no ability to consent to this act. As Mr. Newpoll did recite- Did she have ability to consent to visitation when she was 17 years of age? Yes. I believe that's true. Did her parents have the right to consent to the sex? I don't believe that a parent would have a right to consent to sex for a minor child, no. Okay. Under the old act, Mr. Newpoll is correct, it would require a conviction, and that has not occurred in this circumstance. This would constitute non-consensual sexual penetration by, frankly, the age difference of the seven years. Under the Commonwealth case that I recited in my brief, I believe there is no actual retroactive impact. And we've kind of touched on it now about there is no guarantee under the Parentage Act as compared to the Dissolution Act. This would have no impact or impair his previous rights under any version of the act. There is no guarantee for visitation. There is no, frankly, in my opinion, any application of the impact of liability because, frankly, the gentleman was never prosecuted. Further, I don't believe this imposes any new duties on behalf of the father in question at all. And simply because a law is passed subsequent to certain acts being provided, that doesn't exactly make it retroactive. Do you agree that he was entitled to a hearing under the old statute and not entitled to one under the new? I would agree with that, Justice, yes, you're correct. The plain change in the law was that it absolutely required a conviction under the old act. Then how can you argue that there is no retroactive impact? Because I don't believe there is any guarantee or impact of rights because there is no guarantee of visitation. While a biological relationship creates certain obligations in these cases, I don't believe under the law visitation is a right to have under the Parent Act. So I don't believe it is impactful in that sense. Pertaining to the equality-based provisions, I've cited a plethora of cases. I believe the appellant is state of the incorrect standard, though. I believe that this is based upon intermediate scrutiny, and there has to be a substantial relationship to an important government interest. I think I heard compelling and other standards in it, and I don't believe that that is correct. I also believe that the appellant is not correct in the argument that the statute's purpose is to prevent teenage pregnancies. It's my understanding that the statute's purpose is in effect to deal with someone who has been raped or unable to consent to sexual intercourse which resulted in a pregnancy and a birth. How many fathers do you think or men that father children through criminal acts sign a voluntary acknowledgement of paternity that the mother acknowledges or verifies at the time of birth? Your Honor, I can't really speak on that. I don't know. I have to admit that this is a case that I've never handled before. My primary practice is family law, but I've never had a circumstance where there has been an acknowledgement by a man who basically is conceding an aggravated sexual or criminal abuse to a mother. I was not involved, though, in the parentage action or the child support, so I don't know the facts particularly regarding those issues. So I would believe it's probably minimal that a man is... There was never a criminal complaint filed? My clients actually did go to the police. My client's mother, when she found out about the relationship when my client was 13, did turn this over to the Canton Police Department. They indicated that there was no evidence. When she conceived the child at 16 and a half, was there a complaint at that time? Not to my knowledge. There was no criminal prosecution initiated? There were no criminal... As a matter of fact, it's my understanding there was no investigation of any type. Based on the case law, I believe that, frankly, women's rights and children's rights are an important governmental interest. Additionally, I think the real purpose of the statute here is not, again, to prevent pregnancies as a teenager, but basically to prevent someone who, in effect, committed rape for someone who cannot consent to have to be exposed to this person further in life, in addition to the child. I also don't believe that this is a death sentence to this gentleman's potential rights to have contact with the child. As Mr. Newple indicated, I believe the law indicates in the state of Illinois, a child when they turn approximately 14 has a little bit more... I guess they're considered competent to testify, in so many words. I would also think that, as the child grew older, if the child would like to have a relationship with this person, then that could occur as well. Ultimately, Justices, I don't believe that this has any type of retroactive impact because of the disparity of the argument between the Marriage and Dissolution Marriage Act and the Parentage Act. I believe there is no impact whatsoever retroactively. Additionally, I believe for equal protection purposes, biologically men and women are different, as we all know, which there is a plethora of case law. Women carry the children, have the children. There are not exactly the same type of consequences to the acts of sex. I would ask that the statute be upheld constitutionally, and I would ask that the trial courts really be affirmed on both bases. Mr. Reed, I have one more question. Yes, ma'am. You said that you thought the purpose of the statute is to prevent the rapist from encroaching into the life of his victim. Yes. Is that correct? I believe that's one of the purposes, yes. Doesn't that purpose work both ways? I believe that there is a... If I'm understanding your question correctly, Justice, do you mean in the sense that if the male was younger and the female was older? If the male was, in essence, raped by the female, would that state interest not be the same? I believe that the state has any interest when there is a victim of a rape. However, on the flip side of that, the Paternity Act or Parentage Act would still allow that male victim of an age to still seek visitation in custody, which, again, it's not stated in the statute in that capacity. However, the best interest factors would allow for that to be kicked in in the case would then be presented that the, I guess, male victim would be able to seek custody and visitation on that basis. I believe that there is a difference in this matter, but I believe that statistically proven, despite the fact that there have been male victims, I believe female victims are more, I guess, in numbers. Thank you. Any other questions? Thank you, Mr. Lane. Mr. Neupel, any rebuttal? Yes. Thank you. Just a couple of things I want to mention. The impact is the loss of the right to a hearing. That is our position. The difference between the old statute and the new statute is that, you know, you hear there is no right to a hearing. The mother just, with no conviction, she just trumps it, and she has all the trump cards. So the other thing I want to mention, Mr. Lane, both in his brief and today, argued that I cited 750 ILCS 607 for some proposition. The mention in my brief is on page 13. I said, no, this statute is gender neutral. I just wanted to point out how easy it is to draft statutes correctly, and it is gender neutral. This one could have been gender neutral, too, with just a couple little tweaks. So that's the reason 607 was mentioned. A couple other things. I don't think the record actually reflects that Mr. Kuhn declined visitation. I mean, we discussed things way outside the record here today. You know, I think the record may reflect, if we look through it, and I didn't look at it again this morning, but every time he approached the mother of the child or her family, he was yelled at and so on and embarrassed, and so it was very discouraging to him to have any more contact with them. I think that is what I remember the record saying. The other thing about this particular amended statute is that I didn't raise it, Mr. Lane didn't raise it, the court raised it. Kind of interestingly, it's not in the pleadings. It was brought up the morning of the hearing in chambers prior to the hearing. So I think that that's just an interesting factor here. So the other thing we missed is children's rights, which is part of the state's interest here that Mr. Lane alluded to. I think that also includes input as to the right to visit with their father. So with that said, I have nothing further, unless the court has questions. Questions? Thank you. Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.